USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/26/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLISON MICHELE CRUZ, *on behalf of herself and all others similarly situated*,
Plaintiff,

-v-

JKS VENTURES, INC.,
Defendant.

---

23-cv-8311 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Allison Michele Cruz ("Plaintiff") and Defendant JKS Ventures, Inc., doing business as Incredible Pets ("Defendant") jointly move, by letter brief, for approval of a proposed consent decree that would settle all issues between the parties in this action. Dkt. No. 17.

**BACKGROUND**

Plaintiff's complaint is typical of those that are regularly filed in this District. Plaintiff is a visually-impaired person and a member of a protected class of individuals under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq*. Dkt. No. 9 ¶ 14. She is legally blind and requires screen-reading software to read website content using the computer. *Id.* ¶¶ 2, 39. Defendant is a commercial establishment which sells diverse and high-quality pet products and operates a website, www.incrediblepets.com (the "Website"). *Id.* ¶¶ 4, 23, 41. Plaintiff alleges that the Website is not equally accessible to blind and visually-impaired consumers. *Id.* ¶ 6. On August 17, 2023 and again on September 10, 2023, she attempted to access the Website from her home in the Bronx using a screen-reader in order to purchase dog toys for her son's dog to give

as a gift when she visits her son. *Id.* ¶¶ 13, 20–22, 39, 42. She encountered barriers that denied her full and equal access to Defendant's online goods, content, and services, and was unable to complete the purchase due to the inaccessibility of the Website. *Id.* ¶¶ 20, 24. In particular, due to Defendant's failure to build the Website in a manner that is compatible with screen access programs, "Plaintiff was unable to understand and properly interact with the Website and was thus denied the benefit of purchasing" the "Kong Airdog SqueakAir Ball Dog Toy" that she wished to buy off of the Website. *Id.* ¶¶ 25, 40, 42. The barriers included but were not limited to: missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop-ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse. *Id.* ¶ 43. The Website also contained a host of broken links to non-existent or empty webpages. *Id.* ¶ 44. Despite the "direct harm and frustration" that Plaintiff has experienced due to the inaccessibility of the Website, she intends to attempt to access the Website in the future to purchase products and services offered by the Website, including the "Kong Airdog SqueakAir Ball Dog Toy." *Id.* ¶¶ 29, 46.

On September 20, 2023, Plaintiff brought suit in this District as a putative class action, alleging that Defendant's Website violated Title III of the ADA, as well as the NYCHRL. Dkt. No. 1 ¶¶ 7–8. Plaintiff claimed that the Website, and the goods and services offered thereupon, constitute a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(j). *Id.* ¶ 16. She alleged that because compliance with Web Content Accessibility Guidelines ("WCAG") would provide her and other visually-impaired consumers with equal access to the Website, Defendant has engaged in acts of intentional discrimination. *Id.* ¶ 51. Plaintiff also alleged that Defendant lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible. *Id.* ¶ 54. Plaintiff alleged that class

certification was appropriate under Federal Rule of Civil Procedure 23(b)(2) "because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole." *Id.* ¶ 62; *see* Fed. R. Civ. P. 23(b)(2). She also alleged that class certification is appropriate under Rule 23(b)(3) because facts and legal questions common to class members predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of the litigation. Dkt. No. 1 ¶ 63. She sought injunctive and declaratory relief under federal law and compensatory and punitive damages under the NYCHRL. *Id.* at 20–21.

On October 3, 2023, Plaintiff filed an Amended Complaint. Dkt. No. 9. The Amended Complaint seeks identical relief based on identical allegations.[1] The summons was returned executed on October 29, 2023. Dkt. No. 12. On December 15, 2023, counsel for the Defendant filed Notices of Appearance. Dkt. Nos. 13–14. Days later, on Thursday, December 21, 2023, counsel for Defendant wrote the Court that the parties had reached a settlement and asked that all future deadlines be suspended *sine die*. Dkt. No. 15. Counsel's letter stated that Defendant was unaware it had been served until earlier that week and "[u]pon learning this information, defendant expeditiously reached out to [Plaintiff's] counsel and [the parties] were able to agree upon a settlement." *Id.* at 1. On January 3, 2024, the Court issued an order dismissing the case with prejudice but without prejudice to the right of any party to seek to reopen the case within forty-five days of the Court's order. Dkt. No. 16.

[1] The Amended Complaint simply corrects a spelling error in the Plaintiff's name in the original complaint's caption.

On February 8, 2024, Defendant's counsel submitted the parties' joint request for judicial approval of a proposed consent decree. Dkt. No. 17. Pursuant to the proposed consent decree, Defendant agrees that it:

> a. shall not deny persons with a disability (as defined under the ADA), including the Plaintiff, the opportunity to participate in and benefit from the goods, services, privileges, advantages, and accommodations through the Website as set forth herein. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a);
> b. shall use Reasonable Efforts to provide persons with a disability (as defined under the ADA), including Plaintiff, an equal opportunity to participate in or benefit from the goods, services, privileges, advantages, and accommodations provided through the Website as set forth herein. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.202(b); and
> c. shall use Reasonable Efforts to ensure that persons with a disability (as defined under the ADA), including Plaintiff, are not excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, through the Website as set forth herein. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303.

Dkt. No. 17-1 ¶ 12. The term "Reasonable Efforts" as used in the proposed consent decree is defined broadly to mean:

> with respect to a given goal or obligation, the efforts that a reasonable person or entity in Defendant's position would use to achieve that goal or obligation . . . . Reasonable Efforts shall be interpreted so as to not require Defendant to undertake efforts the cost, difficulty or impact on the Website of which could constitute an undue burden, as defined in Title III of the ADA but as applied solely to the Website—as though the Website were a standalone business entity, or which efforts could result in a fundamental alteration in the manner in which Defendant operates the Website—or the primary functions related thereto, or which could result in a loss of revenue or traffic on their Website-related operations.

*Id.* ¶ 10. The proposed consent decree also requires Defendant to "take appropriate steps as determined to be necessary with the goal of ensuring full and equal enjoyment of the goods, services, privileges, advantages, and accommodations provided by and through the Website (including all pages therein), including websites (including all pages therein and linked to therefrom) that can be navigated to [or] from the Website or which when

entered reroute to the Website." *Id.* ¶ 13. Specifically, Defendant is required, "within 24 months of the Effective Date of the Consent Decree," to "modify the Website as needed to substantially conform to the [WCAG] 2.0 and/or [WCAG] 2.1 Level A Success Criteria or any other WCAG guidelines deemed to be applicable, in such a manner so that the Website will be accessible to persons with vision disabilities." *Id.* ¶ 13(a).

The dispute resolution procedures set forth in the consent decree require a party claiming that the decree has been violated to give notice and at least thirty days to the breaching party to cure the breach before seeking enforcement of the decree with the Court. *Id.* ¶ 15. The Court "shall, in its discretion, award reasonable attorneys' fees and costs to the prevailing party in any such enforcement action." *Id.* However, the proposed decree also requires a party complaining of a violation to obtain support for that claim from an "independent accessibility consultant" before the Defendant is determined to be in breach. *Id.* ¶ 16.

On February 9, 2024, the Court issued an order requesting further information about the proposed consent decree. Dkt. No. 18. The parties filed their joint response on February 16, 2024. Dkt. No. 19.

**DISCUSSION**

Plaintiff and Defendant have chosen to resolve this case in an atypical manner. They do not seek to resolve the case through a settlement agreement that does not require court approval. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Hendrickson v. United States*, 791 F.3d 354 (2d Cir. 2015). Nor do Plaintiff and Defendant seek to have this case certified as a Rule 23(b)(2) class action to make a settlement agreement binding on all putative class members. Fed. R. Civ. P. 23(b)(2), (e). To certify this case as a class action, the Court

would have to give notice to all putative class members, give those putative class members an opportunity to object, and determine that the settlement was fair and reasonable. Fed. R. Civ. P. 23(e); *see, e.g.*, *Marino v. COACH, Inc.*, 2021 WL 827647, at *1–2 (S.D.N.Y. Mar. 3, 2021).

By its terms, the consent decree appears to be binding only on Plaintiff and Defendant, who are identified as the "Parties" to the decree and purports to "resolve[], settle[], and compromise[] all issues between the Parties in the Action." Dkt. No. 17-1 at 1 & ¶ 4.[2] Members of the putative class are identified as "intended third-party beneficiaries" but—as Defense counsel confirmed in response to a query from the Court—not as persons bound by the proposed decree.[3] *Id.* ¶ 20. That limitation, however, appears to be contemplated in name only. As counsel has explained, the proposed consent decree is intended to have precisely the same effect—or as close as possible to precisely the same effect—as a certified Rule 23(b)(2) class action. In the letter to the Court presenting the consent decree for approval, counsel wrote: "the consent decree is designed to serve as a shield for Defendant against claims by other potential plaintiffs who may come forward to assert similar claims based on the putative accessible violations that are being addressed and resolved pursuant to this settlement. Duplicative suits have been a recurring problem in similar matters handled by my law firm and other attorneys defending these matters around the country." Dkt. No. 17 at 2. In a follow-up letter in response to the Court's queries, defense counsel elaborated:

> The purpose of the Consent Decree is to provide protection to Defendants, who have remediated their website to ensure compliance with applicable standards, against potential copycat lawsuits by other plaintiffs who may come forward to

---

[2] The Supreme Court has held that "parties who choose to resolve litigation through settlement may not dispose of the claims of a third party . . . without that party's agreement." *Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986).

[3] In a letter to the Court, defense counsel explained that "[t]he proposed Consent Decree provides rights to Plaintiff under the decree and does not purport to bind non-parties including members of the putative class identified in the Complaint." Dkt. No. 19 at 1.

> assets similar claims based on the putative access violations that are being addressed and resolved pursuant to this settlement. Duplicative suits have been a recurring problems in similar matters handled by my law firm and other attorneys defending these matters around the country, and the Consent Decree agreed to by the parties attempts to provide a measure of protection for Defendant against similar claims for a three-year period. But the claims of any potential future plaintiff are not released or *completely* barred by the decree. It is contemplated that, if a potential plaintiff concludes that the website remains inaccessible in violation of the ADA, that individual could seek leave to intervene.

Dkt. No. 19 at 1 (emphasis added).

To illustrate what Defendant seeks to accomplish through the consent decree, it points to the district court decision in *Hanyzkiewicz v. Allegiance Retail Services, LLC*, 2023 WL 2758355 (S.D.N.Y. Apr. 3, 2023). Dkt. No. 19 at 1. There, Judge Carter dismissed a follow-on complaint alleging that a defendant who had previously been sued for an ADA violation had continued to violate the ADA by offering goods and services through a website that was not accessible to the visually-impaired, and had settled that lawsuit with a similar consent decree. Although Judge Carter rejected the argument that, as a matter of law, the consent decree rendered the follow-on plaintiff's claim moot, *id.* at *2, he reached the same result—dismissal of the claim—through a different route. He accepted the defendant's argument that the follow-on plaintiff should be enjoined from suing the defendant on the identical claims under the All Writs Act, which authorizes "a federal court to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained," *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977), reasoning that the "plaintiff's actions could frustrate the Court's prior consent decree," *Hanyzkiewicz*, 2023 WL 2758355, at *3. However, the court concluded that the plaintiff was "not without recourse," since if the plaintiff "believes that the parties to the original action are not meeting their obligations under the consent decree," the plaintiff could "move to enforce the

consent decree on the parties under Rule 71 of the Federal Rules of Civil Procedure." *Id.* The upshot of *Hanyzkiewicz* was that the follow-on plaintiff was not permitted to exercise her rights accorded by the ADA to every disabled person to pursue an independent action, and to obtain attorneys' fees if she prevailed. *See* 42 U.S.C. § 12205 ("[T]he court . . . , in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs.").

The Court declines to approve the consent decree on the present record. In asking the Court to approve the consent decree, defense counsel makes reference to a three-prong test that was set forth by the United States Court of Appeals for the Second Circuit in *Kozlowski v. Coughlin*, 871 F.2d 241 (2d Cir. 1989). There, the court stated that "[b]efore entering a consent judgment, the district court must be certain that the decree 1) 'springs from and serves to resolve a dispute within the court's subject-matter jurisdiction,' 2) 'comes within the general scope of the case made by the pleadings,' and 3) 'furthers the objectives of the law upon which the complaint was based.'" *Id.* at 244 (quoting *Int'l Ass'n of Firefighters*, 478 U.S. at 525). Defendant presumably means to suggest—as at least two Magistrate Judges in this Circuit have held—that a reviewing court need not consider whether the decree is "fair and reasonable and in the public interest" before approval. *See Crosson v. PopSockets LLC*, 2019 WL 6134416, at *2 n.2 (E.D.N.Y. Oct. 8, 2019), *report and recommendation adopted*, 2019 WL 6134153 (E.D.N.Y. Nov. 19, 2019); *Figueroa v. Arhaus, LLC*, CM-ECF 18 Civ. 10491(GWG), Dkt. No. 16 (S.D.N.Y. Feb. 20, 2019); *see also Riverkeeper, Inc. v. MLV Concrete Inc.*, 2017 WL 3172897, at *2 (E.D.N.Y. June 26, 2017), *report and recommendation adopted*, 2017 WL 3172859 (E.D.N.Y. July 25, 2017) (applying *Kozlowski*'s standards). Presumably the parties would also

have the Court eschew any inquiry into whether the proposed consent decree is the product of any form of improper collusion.

The Court respectfully disagrees.[4] In *Kozlowski*, the court was addressing the district court's power to enforce a consent judgment that granted relief greater than that arguably required by law. *See* 871 F.2d at 243–44 (summarizing the arguments of Commissioner Coughlin). The case was hotly litigated and the consent decree at issue was executed after what appears to have been robust arms-length negotiations before trial and after the court had rendered a decision on a motion for summary judgment. *Id.* at 242; *see also Kozlowski v. Coughlin*, 711 F. Supp. 83, 85 (S.D.N.Y. 1988) (stating that the consent decree was the product of "lengthy negotiations to establish appropriate due process procedures"). As the motion at issue in *Kozlowski* was presented to the district court, the consent decree was negotiated between two parties with opposing interests, the order appealed from was the result of an adversarial proceeding, and there was no issue regarding the fairness and reasonableness of the settlement. *Kozlowski*, 711 F. Supp. at 85. Accordingly, there was simply no occasion for the Second Circuit to consider whether the parties had colluded with one another or whether the consent decree at issue was fair and reasonable.

After *Kozlowski*, the Second Circuit decided *U.S.S.E.C. v. Citigroup Global Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014), which *did* address the standards a district court should employ in deciding whether to enter a consent decree. The Second Circuit held that, at a minimum, the

---

[4] Other judges in this District have also raised questions about this form of consent decree. *See, e.g.*, *Toro v. U.S. Toy Co.*, CM-ECF 23-cv-1990(AS), Dkt. No. 19 (ordering the parties to file either a stipulation of settlement and dismissal or a joint letter stating that the parties would like the Court to enter a ruling on the proposed consent decree); *Bishop v. The Sherry-Netherland, Inc.*, CM-ECF 18-cv-9206(BM), Dkt No. 15 (ordering the parties to submit a joint letter brief on the public docket in support of request for judicial approval of proposed consent decree).

court must "assess (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind." *Id.* at 294–95 (internal citations omitted). The court stated that a party invoking the power of the courts to order a consent decree and issue an injunction must "assure the court that the settlement proposed is fair and reasonable," *id.* at 297, and that "when a proposed consent decree contains injunctive relief, a district court must also consider the public interest in deciding whether to grant the injunction," *id.* at 296. The Circuit reiterated, "when the district judge is presented with a proposed consent judgment, he is not merely a rubber stamp." *Id.* at 293 (quoting *S.E.C. v. Levine*, 881 F.2d 1165, 1181 (2d Cir. 1989)); *see Int'l Ass'n of Firefighters*, 478 U.S. at 525 ("[A] federal court is more than 'a recorder of contracts' from whom parties can purchase injunctions; it is 'an organ of government constituted to make judicial decisions.'" (internal citations omitted)).

*Citigroup* arose in the particular context of a government enforcement action, and most of the cases that have since applied it have also involved government enforcement actions. *See, e.g.*, *Sec. & Exch. Comm'n v. Caledonian Bank Ltd.*, 317 F.R.D. 358 (S.D.N.Y. 2016); *Consumer Fin. Protection Bureau v. Sprint Corp.*, 2015 WL 3395581 (S.D.N.Y. May 19, 2015); *United States v. Int'l Bus. Mach. Corp.*, 2014 WL 3057960 (S.D.N.Y. July 7, 2014); *S.E.C. v. CR Intrinsic Invs., LLC*, 26 F. Supp. 3d 260 (S.D.N.Y. 2014). But there is no suggestion in *Citigroup* itself that the standards it elaborated should be confined to government enforcement

actions.[5] Although consent decrees have attributes of contracts, *United States v. ITT Cont'l Banking Co.*, 420 U.S. 223, 236 (1975), they also constitute judicial decrees, *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). They are "entered as a judgment, the court retains the power to modify a consent decree in certain circumstances over the objection of a signatory, [and] noncompliance with a consent decree is enforceable by citation for contempt of court." *Int'l Ass'n of Firefighters*, 478 U.S. at 518. The Court thus has an independent interest in assuring that it is not being used as an instrument of fraud. *Cf. Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (court has inherent power to ensure it has not been the victim of a fraud). The Circuit did not distinguish *Kozlowski*, which also involved a lawsuit settled by a government agency. It cited the opinion with approval as support for the Circuit's four-part test. *Id.* at 294–95. While a district court may have a modest role in determining whether an agreement between two sophisticated parties was fair and reasonable, it must still ensure that it is procedurally proper, resolves the disputes in the case and is not a sham. *See, e.g.*, *Gov't Emp. Ins. Co. v. Landow*, 2022 WL 939717, at *14 (E.D.N.Y. Mar. 29, 2022) (preventing fraud is in the public's interest); *cf. Caledonian Bank*, 317 F.R.D. at 369 (describing the factors for determining a consent decree is fair and reasonable). Moreover, in laying out the "public interest" element that must be satisfied when a decree involves any form of injunctive relief, the *Citigroup* court relied upon the Supreme Court's decision in *eBay, Inc. v. MercExchange,* 547 U.S. 388, 391 (2006), and its own prior opinion in *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010), neither of which

---

[5] Whether *Kozlowski* or *Citigroup* applies to a purely private action has occasioned some disagreement and has resulted in somewhat arcane discussions of whether an action should be deemed a government enforcement one, seemingly divorced from the purposes for which the court engages in judicial review. *See In re N.Y.C. Pol'y During Summer 2020 Demonstrations*, 2024 WL 476367, at *12–13 (S.D.N.Y. Feb. 7, 2024) (discussing whether the *Kozlowski* or the *Citigroup* standard applies). The issue is one that could be helpfully clarified by the Second Circuit if the occasion arises.

involved a government party. *Citigroup*, 752 F.3d at 296. Indeed, if anything, *Citigroup* suggests that district court review of a consent decree proposed by a government enforcement agency should be more relaxed than review of a consent decree proposed by two private parties. Citing administrative law decisions, the Circuit explained that "[t]he job of determining whether the proposed S.E.C. consent decree bests serves the public interest . . . rests squarely with the S.E.C." and that the district court may not "find the public interest disserved based on its disagreement with the S.E.C.'s decisions on discretionary maters of policy." *Id.* at 296–97. Such separation of powers concerns are obviously not applicable to the resolution of a lawsuit between two private parties. Although the attorneys' fee provisions of the ADA may make Plaintiff here a "private attorney general," *see Fox v. Vice*, 563 U.S. 826, 863 (2011) (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)), she is still not *the* Attorney General. It is appropriate that the Court inquire whether an injunction disserves the public interest before the Court commits to using public resources for the purposes of enforcing it.

The Court accordingly will hold a hearing to determine whether the settlement is fair and reasonable and is free from any improper collusion and whether the injunction is in the public interest. The record before the Court "raises a suspicion that the consent decree was entered as a result of improper collusion." *Citigroup*, 752 F.3d at 296. From that record, it appears that the settlement was reached within days, perhaps hours, of defendant being made aware of the lawsuit and on the eve of the Christmas holiday. *See* Dkt. No. 15 (upon learning that it was being sued, "defendant expeditiously reached out to counsel and we were able to agree upon a settlement"). There is no evidence of "adversarial negotiations" or that the parties exchanged any materials (besides the formulaic complaint) based upon which Defendant would have been made aware of the specific problems with its Website and based upon which Plaintiff would have been made

confident that Defendant had a plan to remediate and that its promises to become ADA-compliant were anything other than superficial and cosmetic. *See United States v. N.Y.C. Hous. Auth.*, 347 F. Supp. 3d 182, 207 (S.D.N.Y. 2018) (relevant factors in determining whether a decree was tainted by improper collusion include "whether the settlement resulted from arm's-length negotiation, the sophistication of the parties and competence of counsel, and the extent to which the proposed decree reflects adversarial negotiations"). Moreover, the proposed decree itself bears the hallmarks of an effort not to achieve the objectives of the ADA but to achieve the objectives of avoiding any future ADA lawsuits against Defendant. Although Defendant promises not to "deny persons with a disability . . . the opportunity to participate in and benefit from the goods, services, privileges, advantages, and accommodations through the Website," Dkt. No. 17-1 ¶ 12a, that promise is qualified by the condition that it need do so only "as set forth" in the decree, *id.* The only obligation that Defendant commits itself to is the use of "Reasonable Efforts" to achieve ADA compliance. *See id.* ¶¶ 12b, 12c, 11. That qualification is further conditioned by an enforcement mechanism that, upon initial review, appears almost designed to deter any party from challenging Defendant's efforts at compliance. A disagreement with respect to whether the Defendant has used "Reasonable Efforts" as defined in the proposed consent decree is subject to the dispute resolution procedures in the decree, *id.* ¶¶ 10, 14, which in turn provide, *inter alia*, that "Defendant shall not be in breach of this Consent Decree unless: (a) an independent accessibility consultant determines that a particular item(s) cannot be accomplished by a person with a disability who has average screen reader competency using a prominent commercially available screen reader . . . ; and (b) Defendant fails to remedy the issue by seeking to use Reasonable Efforts within a reasonable period of time," *id.* ¶ 16. Whereas under the law Congress designed visually-impaired persons are intended to be incented to bring

lawsuits as soon as they have a basis to claim a violation,[6] under the consent decree designed by the parties, a party seeking to challenge Defendant's website compliance faces legal hurdles. It may be that such provisions are appropriate, but the Court cannot make that determination without a hearing. The history and duration of the negotiations between the parties, the information exchanged by them, the financial compensation provided to Plaintiff and to Plaintiff's lawyer, and the involvement of Plaintiff herself in the negotiations and approval of the proposed consent decree may all be relevant to determining whether the settlement was the product of improper collusion.

Finally, because of the speed with which the settlement was reached, the Court has before it no "sufficient record . . . on which to determine if the proposed decree [is] fair and reasonable." *Citigroup*, 752 F.3d at 296. Accordingly, before the Court signs a decree that—if violated—will bring its enforcement powers to bear, it must have some information to determine whether the remedy agreed to by the parties fits the alleged violation charged by the Plaintiff and furthers the objectives of the ADA. *See Kozlowski*, 871 F.2d at 244.

**CONCLUSION**

The Court will hold a hearing to address whether the proposed consent decree should be approved on March 22, 2024, at 10:00AM in person in Courtroom 15C of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007. Papers in support of the consent decree shall be filed on the docket by March 15, 2024.

---

[6] "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.,* 707 F.3d 144, 160 (2d Cir. 2013) (quoting *Noel v. N.Y.C. Taxi & Limousine Comm'n,* 687 F.3d 63, 68 (2d Cir. 2012)).

SO ORDERED.

Dated: February 26, 2024
New York, New York

LEWIS J. LIMAN
United States District Judge